UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALES AND GONZALES BONDS AND INSURANCE AGENCY INC,<br><br>Plaintiff(s),<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant(s). | No. C 11-02267 DMR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendant United States Department of Homeland Security ("DHS") moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment against all claims in Plaintiff Gonzales and Gonzales Bonds and Insurance Agency, Inc.'s complaint. Plaintiff opposes Defendant's motion and cross-moves for summary judgment. For the reasons stated below, the court grants in part and denies in part Defendant's motion, and grants in part and denies in part Plaintiff's motion as well.

**I. Background and Procedural History**

Plaintiff is an authorized agent and underwriter of bonds. It posts immigration bonds with DHS on behalf of American Surety Company, a federally approved surety company, for the release of aliens from detention pending determination of the alien's immigration status. (Am. Compl. ¶¶ 6, 16; Def.'s Mot. Summ. J. 3.) Since June 23, 2009, Plaintiff has filed approximately 571 alien file

**United States District Court**
For the Northern District of California

1  ("A-file")[1] requests with DHS pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

2  § 552. (Am. Compl. ¶¶ 1, 30; Laird Decl. ¶ 4, Apr. 12, 2012.) According to Plaintiff, DHS has

3  failed to respond to many of these FOIA requests; with respect to those requests to which DHS has

4  replied, Plaintiff alleges that the responses were untimely[2] and that DHS "improperly withheld A-

5  file documents."[3] (Am. Compl. ¶ 30.) Plaintiff attributes many of these allegedly improper

---

[1] The A-files concern aliens released from detention subject to one of Plaintiff's bonds and contain documents relevant to disputed bond breach claims. (Am. Compl. ¶¶ 1, 17, 29.) The documents help Plaintiff "(1) locat[e] and produc[e] the alien to DHS, (2) identify[] available defenses under the terms of the bonds . . . , and (3) mitigat[e] damages claimed by DHS." (Am. Compl. ¶ 29.) DHS states that A-files may contain the following documents and data:

> naturalization certificates; birth and marriage certificates; applications and petitions for benefits under immigration and nationality laws (e.g., asylum petitions); reports of arrests and investigations; records of proceedings before or filings made with the U.S. immigration courts and any administrative or federal district court or court of appeal; correspondence; statements, reports and memoranda. Alien Registration Numbers ("A-Numbers"); physical and mailing addresses; phone numbers and email addresses; Social Security Number; date of birth; place of birth (city, state, and country); countries of citizenship; physical characteristics, photographs, fingerprints; government-issued identification information (i.e., passport, driver's license); arrival/departure information (record number, expiration date, class of admission, etc.); FBI Identification Number; Fingerprint Identification Number; immigration enforcement history, including arrests and charges, immigration proceedings and appeals, and dispositions including removals or voluntary departures; immigration status; family history; travel history; education history; employment history; criminal history; professional accreditation information; medical information relevant to an individual's application for benefits under the Immigration and Nationality Act before the Department or the immigration court, an individual's removability from and/or admissibility to the United States, or an individual's competency before the immigration court; specific benefit eligibility information as required by the benefit being sought; and a video or transcript of an immigration interview.

(Def.'s Mot. Summ. J. 4 (citations omitted).)

[2] FOIA provides that an agency "shall" rule on any request for documents within twenty days. § 552(a)(6)(A)(i). It also provides agencies with twenty days to make a determination on any appeal from an initial determination. § 552(a)(6)(A)(ii).

[3] DHS continues to assert that it responded to Plaintiff's FOIA requests under the Privacy Act of 1974, 5 U.S.C. § 552a, and thus appears to treat the two statutory schemes as interchangeable. (Def.'s Mot. Summ. J. 2 ("DHS construed Plaintiff's FOIA requests as requests under the applicable routine use provision of the Privacy Act . . . ."), 4-9; Law Decl. ¶¶ 5, 7, Aug. 23, 2012; Laird Decl. ¶ 5.) As this court has previously recognized, the FOIA and the Privacy Act are distinct mechanisms for obtaining government information, and it is legal error to conflate them, [Docket No. 44 at 2]. *See U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994); *Pierce v. U.S. Dep't of U.S. Air Force*, 512 F.3d 184, 191 (5th Cir. 2007) (holding that FOIA "is an entirely different framework" than Privacy Act) (citing *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 76 (D.C. Cir.1982); *Rojem v. U.S. Dep't of Justice*, 775 F. Supp. 6, 13 (D.D.C. 1991); *Simon v. U.S. Dep't of Justice*, 752 F. Supp. 14, 22-23 (D.D.C. 1990)). The production of documents under the Privacy Act does not nullify DHS's obligations under FOIA. *See Rojem*, 775 F. Supp. at 13. (*But see* Def.'s Mot. Summ. J. 2 ("Defendant has already responded to all of Plaintiff's [FOIA] requests under the applicable routine use provision of the Privacy

withholdings to DHS's reliance on the consent provision in 6 C.F.R. § 5.3(a) ("the Consent Provision"), through which DHS mandates that if a party makes a FOIA request about another individual, "either a written authorization signed by that individual permitting disclosure of those records . . . or proof that that individual is deceased . . . must be submitted," § 5.3(a). (Am. Compl. ¶ 31.)

On May 9, 2011, Plaintiff filed this action, bringing three causes of action against DHS stemming from the agency's alleged failure and/or refusal to provide Plaintiff with the A-files. (*See generally* Compl.) In Count I, Plaintiff claimed that DHS improperly responded to 183 A-file requests by providing Plaintiff only with so-called "Record of Proceedings" documents ("ROPs") or a letter giving a brief description of the alien's status as removed, in removal proceedings, or apprehended and in custody. (Compl. ¶¶ 29-32; *see* Compl. Exs. 9-13.) Plaintiff filed administrative

appeals for each request between October 30, 2009 and April 7, 2010. (Compl. ¶ 33.) However, as of May 6, 2011, with the exception of the acknowledgment of one appeal, DHS had failed to timely respond to these appeals.[4] (Compl. ¶ 33.) In Count II, Plaintiff claimed that when it filed an additional 240 A-file requests, DHS again insufficiently and untimely responded with more ROPs. (Compl. ¶¶ 35-37; *see* Compl. Ex. 14.) Plaintiff did not appeal these requests, because it believed from its experience in Count I that doing so would have been futile. (Compl. ¶ 38.) In Count III, Plaintiff claimed that as of May 6, 2011, DHS had failed to timely acknowledge, let alone properly respond to, 148 other requests that it had submitted between August 6, 2009 and April 4, 2011. (Compl. ¶ 40; *see* Compl. Ex. 16.) Plaintiff did not appeal these requests, as it believed that it would have proven futile in light of its experiences set forth in Count I. (Compl. ¶ 40.)

Defendant moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction or, in the alternative, for Plaintiff's failure to exhaust its administrative remedies. [Docket No. 28.] In the

---

Act.") (citation omitted).)

[4] During a motion hearing on February 9, 2012, DHS conceded that, as of that date, it had not issued determinations in any of Plaintiff's FOIA appeals. (Mot. Hr'g Recording at 11:11-15, Feb. 9, 2012.)

3

latter argument, DHS asserted that Plaintiff failed to perfect its administrative appeals and that, when seeking information about third-parties, Plaintiff failed to submit the consent authorization required by § 5.3(a). The court granted Defendant's motion on the grounds that Plaintiff had failed to exhaust his administrative remedies by not adhering to the Consent Provision, and dismissed Plaintiff's complaint with leave to amend. *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, No. 11-2267 DMR, 2012 WL 424852, at *6 (N.D. Cal. Feb. 9, 2012). In the interest of conserving the court's and parties' resources, the court also held that Plaintiff's failure to exhaust its administrative remedies with respect to the FOIA applications in Counts II and III did not preclude the court from entertaining Plaintiff's claims. *Id.* In light of DHS's treatment of Plaintiff's applications in Count I, to have required Plaintiff to exhaust its administrative remedies would have proven futile. *Id.*

On March 2012, Plaintiff filed its Amended Complaint, which states four causes of action against DHS. [Docket No. 36.] Counts I, II, and III in the Amended Complaint trace their respective counterparts in the original complaint, as described above. (Am. Compl.¶¶ 34-51; *see* Am. Compl. Exs. 10-17.) In Count IV, Plaintiff challenges the validity of the Consent Provision, "generally and as applied to [its] requests," pursuant to FOIA or, in the alternative, 5 U.S.C. § 706(2) of the Administrative Procedure Act ("APA"). (Am. Compl. ¶¶ 53-70.) According to Plaintiff, the provision transgresses the FOIA statutory scheme because it "amounts to a substantive 'tenth' exemption to disclosure under the guise of a procedural requirement for making a FOIA request." (Am. Compl. ¶ 54.) "If a party does not have the consent . . . , then DHS takes the position that it can withhold every single document requested without the need to determine whether any of the specific nine withholding exemptions specified in the FOIA apply." (Am. Compl. ¶ 54.)

DHS moved to dismiss Plaintiff's FOIA claims for failure to exhaust administrative remedies, and its APA claim for failing to state a claim upon which relief can be granted. [Docket No. 38.] In the former argument, DHS asserted that Plaintiff's claims warranted dismissal because Plaintiff failed to exhaust his administrative remedies when it refused to submit § 5.3(a) consent forms with its FOIA applications. In the latter argument, DHS argued that Plaintiff's APA claim challenging the procedural validity of the Consent Provision was time-barred pursuant to the six-

4

year statute of limitations in 28 U.S.C. § 2401(a). The court granted the motion in part and denied it in part. *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, No. 11-2267 DMR, 2012 WL 1815632 (N.D. Cal. May 17, 2012). The court noted that Plaintiff challenges the lawfulness of the Consent Provision in the context of FOIA's statutory scheme and that Plaintiff could bring such a substantive claim only after failing to comply with the contested regulation. *Id.* at *4. The court therefore declined to apply the administrative exhaustion doctrine because the validity of the regulation rests upon statutory interpretation – an area of court, rather than agency, expertise. *Id.* Turning to the APA claim, the court dismissed Plaintiff's facial challenge, which amounted to a procedural attack on the Consent Provision, as time barred, but found no such statute of limitations obstacle to Plaintiff's as-applied APA challenge.[5] *Id.* at *5-6.

The parties now cross-move for summary judgment. The parties filed consents to this court's jurisdiction pursuant to 28 U.S.C. § 636(c). [Docket Nos. 10, 11.] The court therefore may enter judgment in the case. *See* 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72-1.

## II. Summary Judgment

A court will grant summary judgment "if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id.* at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

---

[5] That Plaintiff may not bring a claim challenging a procedural violation in the adoption of the Consent Provision pursuant to the APA does not preclude Plaintiff from bringing a timely substantive challenge to the regulation under FOIA. *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991).

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

### III. Discussion

#### A. The Parties' Arguments

##### 1. DHS's Arguments

DHS offers two broad arguments in support of its motion. The agency argues that Plaintiff may not challenge the Consent Provision under the APA because FOIA provides Plaintiff with an adequate remedy. (Def.'s Mot. Summ. J. 16.) Assuming *arguendo* that the court finds that Plaintiff has a valid APA claim, DHS avers that the Consent Provision remains valid because the agency "applies [it] consistently to bond obligors and non-bond obligors alike," because "Plaintiff cannot provide any legal basis for any assertion that it is not a third party requestor or that it is somehow exempt from the regulation," and because there is no "evidence that Defendant selectively enforced [the Consent Provision] against Plaintiff." (Def.'s Mot. Summ. J. 17.) Moreover, DHS insists that Plaintiff's claim against the Consent Provision under the APA is barred because "Plaintiff continues to make a facial challenge" -- rather than an as-applied challenge -- to the regulation, which the court previously dismissed as untimely. (Def.'s Opp'n to Pl.'s Cross-Mot. Summ. J. & Reply in Supp. of Def.'s Mot. Summ. J. 2 n.1.)

According to DHS, the Consent Provision also is lawful and comports with FOIA because "FOIA mandates agencies to promulgate rules and procedures regarding how to make a request for

6

records." (Def.'s Mot. Summ. J. 12 (citing 5 U.S.C. § 552(a)(1)[6]).) The agency reasons that because it "can only make records [requested through FOIA] available after it receives a request made in accordance with [the] agency's rules," and the Consent Provision "require[s] the requester to provide verification of identify and/or consent from the subject of the request before disclosure of information can be made," requiring FOIA applicants to adhere to the Consent Provision is lawful per se. (Def.'s Mot. Summ. J. 12 (citing § 552(a)(3)(A)[7]).) Stated more simply, DHS contends that "[b]ecause FOIA specifically mandates that agencies promulgate their own rules and procedures stating how to make a request for records, DHS's third-party consent requirement does not contradict FOIA; rather it was authorized by FOIA." (Def.'s Mot. Summ. J. 12 (citations omitted).) To underscore the validity of the Consent Provision, DHS avers that the regulation serves to "protect[] the privacy of individuals" in compliance with the FOIA invasion of privacy provisions in § 552(b)(6) and (7). (Def.'s Mot. Summ. J. 13.)[8]

### 2. Plaintiff's Arguments

Plaintiff challenges DHS's interpretation of the Consent Provision and contends that it "impermissibly conflicts with the FOIA and case law interpreting the FOIA." (Pl.'s Cross-Mot.

---

[6] This subsection states in relevant part that:
Each agency shall separately state and currently publish in the Federal Register for the guidance of the public--(A) descriptions of . . . the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions; (B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available; (C) rules of procedure . . . .
§ 552(a)(1).

[7] Subsection (a)(3)(A) states in relevant part that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." § 552(a)(3)(A).

[8] DHS additionally asserts that the court should grant it summary judgment because "Courts regularly dismiss complaints where the plaintiffs fail to comply with [the Consent Provision]." (Def.'s Mot. Summ. J 13-15 and cases cited therein.) The court will not address this argument, as it does not reflect the legal issues before the court. Plaintiff challenges the validity of the Consent Provision itself. There is no dispute that Plaintiff did not comply with the provision, and in fact, Plaintiff could not bring this claim if it had done so. DHS's argument that the court should grant it summary judgment because Plaintiff did not comply with the Consent Provision is, in effect, an attempt to resurrect DHS's administrative exhaustion argument, which the court has already denied. *Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 2012 WL 1815632, at *4.

7

Summ. J. & Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Mot. Summ. J.") 5.) According to Plaintiff, the FOIA statutory scheme allows for nine narrow exemptions under which a government agency may withhold documents subject to a disclosure request. The Consent Provision, however, impermissibly expands the scope of documents that DHS withholds and amounts to an agency-created "tenth, substantive exemption under the FOIA" which the court must strike down. (Pl.'s Mot. Summ. J. 6-10.) Plaintiff asserts that the Consent Provision also violates FOIA by "impermissibly divid[ing] the following requesters: (1) individuals seeking documents about themselves and/or individuals who may be able to easily obtain consent, *i.e.* family members" and "(2) individuals and companies who may find it difficult, if not impossible,to obtain consent." (Pl.'s Mot. Summ. J. 12.) According to Plaintiff, under FOIA the identity of requesters and why they seek information is irrelevant; agencies processing FOIA requests may consider only "whether records must be released." (Pl.'s Mot. Summ. J. 12.)

### B. The Administrative Procedure Act

The Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, governs judicial review of final agency actions. *See* § 701(a). The purview of the Act, however, does not encompass review of agency actions where other adequate avenues of redress exist. §§ 703, 704; *Kubik v. U.S. Fed. Bureau of Prisons*, No. 10-6078, 2011 WL 2619538, at *12 (D. Or. July 1, 2011). In the present matter, FOIA provides Plaintiff with an adequate remedy for its first three claims, which contest DHS's FOIA determinations. § 552(a)(4)(B) (granting district courts subject matter jurisdiction to entertain FOIA appeals). FOIA also provides the lens through which the court must analyze the lawfulness of the Consent Provision in Count IV, as explained below. Because Plaintiff's claims have adequate, alternate avenues of redress, the court dismisses Plaintiff's claims under the APA.

### C. The Consent Provision Under FOIA

#### 1. Judicial Review of Agency Regulations

As noted above, DHS contends that the Consent Provision is valid because FOIA grants administrative agencies the authority to promulgate regulations governing procedures for making FOIA requests. Although FOIA instructs agencies to formulate regulations to enact FOIA's mandate, § 552(a)(1), this limited grant of authority by Congress does not provide agencies with

unfettered regulatory power. *See, e.g.*, *United States v. Mead Corp.*, 533 U.S. 218 (2001); *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). As the Supreme Court has held,

> "[t]he power . . . to administer a federal statute and to prescribe rules and regulations to that end is . . . (only) the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity."

*United States v. Larionoff*, 431 U.S. 864, 873 n.12 (1977) (second ellipses and parentheses in original) (citations omitted) (quoting *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134 (1936)). These fundamental tenets of administrative law apply to DHS and its FOIA regulations. *Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1335 (9th Cir. 1987) (per curiam) (holding that "[a] basic policy of FOIA is to ensure that Congress and not administrative agencies," such as DHS, "determines what information is confidential" and stressing federal courts' "responsibility to ensure that agencies do not interpret the exemptions too broadly"); *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983) ("Congress has made clear both that the federal courts, and not the administrative agencies, are ultimately responsible for construing the language of the FOIA, and that agencies cannot alter the dictates of the Act . . . ." (citations omitted))[9]; *see also Wind River Miming Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991) (holding that party may challenge substance of agency decision "as exceeding . . . statutory authority" within six years of challenged decision). Because the Consent Provision is subject to judicial review, the court turns to Plaintiff's contentions that the provision offends FOIA by unlawfully expanding the scope of permissible withholdings and by treating requesters differently based on their identity. The court then will examine DHS's argument that the provision is valid because it protects individuals' privacy as mandated by FOIA's sixth and seventh disclosure exceptions, § 552(b)(6) and (7)(C).

**2. Standard of Review**

---

[9] "[T]he federal courts in the District of Columbia have long been on the leading edge of interpreting the FOIA." *Our Children's Earth Found. v. U.S. EPA*, No. 08-1461 SBA, 2008 WL 3181583, at *6 (N.D. Cal. Aug. 4, 2008) (citation and quotation marks omitted); *accord In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983) (noting that Congress added District of Columbia to list of fora in which FOIA complaint may be brought in part to "provide plaintiffs with an opportunity to bring complaints in a court which has 'substantial expertise' in working with the FOIA").

The standard of review a court should apply when reviewing the propriety of an agency's FOIA regulations appears somewhat unclear. Some courts employ a *de novo* standard of review and "decline to accord deference to agency interpretations of the statute," "because FOIA's terms apply government-wide." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001) (citing *Reporters' Comm. for Freedom of Press v. U.S. Dep't of Justice*, 816 F.2d 730, 734 (D.C. Cir. 1987) (declining to accord *Chevron* deference to Justice Department interpretation of FOIA exemptions because FOIA "applies to all government agencies, and thus no one executive branch entity is entrusted with its primary interpretation")) (citations omitted); *accord Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc), *petition for cert. filed* 81 U.S.L.W. 3128 (U.S. Aug. 29, 2012) (No. 12-289); *see also United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999) (noting that agencies interpret statutes when creating regulations); *Shell Oil Co. v. United States*, 688 F.3d 1376, 1381 (Fed. Cir. 2012) (same); *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173-74 (D.C. Cir. 2003) (same). These courts reason that, because "[n]o one federal agency administers FOIA," only *de novo* review can ensure that "[t]he meaning of FOIA [remains] the same no matter which agency is asked to produce its records." *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997); *accord Gernstein v. CIA*, No. 06-4643 MMC, 2006 WL 3462658, at *7 n.3 (N.D. Cal. Nov. 29, 2006).

On the other hand, other courts advocate use of the familiar deferential standard established in *Chevron U.S.A., Inc.*, which held that

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837 at (footnotes omitted). Stated simply, if a statute is unambiguous, an agency's regulation must adhere to the statute's explicit intent. If a statute is ambiguous, the court will defer to an agency's regulation implementing the statute if the agency's interpretation of the statute is reasonable. *See, e.g.*, *Envtl. Protection Info. Ctr. v. U.S. Forest Serv.*, 432 F.3d 945, 947-48 (9th

1 Cir. 2005) (analyzing validity of FOIA regulation promulgated by Office of Management and
2 Budget using *Chevron* test); *Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31, 40-42 (D.D.C. 2011).
3 A permissible interpretation is "rational and consistent with [the statutory scheme]." *Local Joint*
4 *Exec. Bd. of Las Vegas v. NLRB*, 657 F.3d 865, 870 (9th Cir. 2011) (citing *United Food &*
5 *Commercial Workers Union v. NLRB*, 307 F.3d 760, 766 (9th Cir. 2002) (en banc)); *accord Envtl.*
6 *Protection Info. Ctr.*, 432 F.3d at 947-48. However, these courts rarely explain the reasoning
7 underpinning their standard of review choice and never mention the possibility of other standards of
8 review. *See, e.g.*, *Bensman*, 806 F. Supp. 2d at 40-42.

9 Although the court finds the arguments for applying *de novo* review more persuasive, out of
10 an abundance of caution, the court will examine the validity of the Consent Provision under both
11 standards. With respect to both analyses, the court notes that, although FOIA explicitly commands
12 administrative agencies to promulgate procedural regulations to govern an agency's handling of
13 FOIA requests, § 552(a)(1), the statute does not specify limitations, i.e., is ambiguous, on these
14 regulations' content and effect. The court therefore must examine FOIA to discern whether the
15 Consent Provision is in accordance with the law.

### 3. The FOIA Statutory Scheme

17 When Congress enacted FOIA, it intended to "clos[e] the loopholes which allow agencies to
18 deny legitimate information to the public." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150
19 (1989) (citations and quotation marks omitted). Congress thus structured FOIA so that an agency
20 must disclose records "to any person . . . unless they may be withheld pursuant to one of the nine
21 enumerated exemptions

listed in § 552(b)."[10] *Id.* at 150-51 (citation and quotation marks omitted); *accord Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012). "'These exemptions are explicitly made exclusive, and must be narrowly construed." *Muttitt v. U.S. Cent. Command*, No. 10-202,

---

[10] The subsection listing the exemptions states in full:
This section does not apply to matters that are--
(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;
(2) related solely to the internal personnel rules and practices of an agency;
(3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute--(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.
(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;
(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;
(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or
(9) geological and geophysical information and data, including maps, concerning wells.

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.
§ 552(b).

2011 WL 4478320, at *3 (D.D.C. Sept. 28, 2011) (quoting *Milner v. U.S. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011)); *accord Tax Analysis*, 492 U.S. at 151; *Morley v. C.I.A.*, 508 F.3d 1108, 1114-15 (D.C. Cir. 2007). If an agency determines that an exemption applies, the agency "may withhold only that information to which the exemption applies" and "must provide all 'reasonably segregable' portions of that record to the requester." *Yonemoto*, 686 F.3d at 688 (quoting § 552(b)); *accord Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of the Treasury*, No. 07-2590 PJH, 2008 WL 4482855, at *12 (N.D. Cal. Sept. 30, 2008) (citing *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 943-44 (9th Cir. 1979)). An agency invoking an exception bears the burden of proving that it applies. *Yonemoto*, 686 F.3d at 688 (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989)); *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 2008 WL 4482855, at *5 (citing *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996)); *Grove v. CIA*, 752 F. Supp. 28, 30 (D.D.C. 1990). Records that an agency withholds for reasons not within the exemptions "are improperly withheld." *Tax Analysts*, 492 U.S. at 151 (footnote omitted); *accord Morley*, 508 F.3d at 1119.

### 4. The Consent Provision Under *Chevron*

#### a. The Consent Provision Within the FOIA Statutory Scheme

The Consent Provision, which DHS characterizes as effectuating the privacy exemptions in § 552(b)(6) and (7)(C), (*see* Def.'s Mot. Summ. J. 13), violates FOIA by allowing DHS to improperly withhold records, by releasing the agency from its obligation to demonstrate that FOIA's exemptions apply, and by circumventing judicial review of its determinations. DHS admits that "[w]hen a request for records pertaining to a third party is the subject of a FOIA request, [it] typically informs the requester that *in order for the agency to begin a search*," the requester must comply with the Consent Provision. (Law Decl. ¶ 11 (emphasis added); *see* Law Decl. ¶ 8.) In other words, DHS not only will withhold all records if a requester does not or cannot comply with the provision, but will not even determine what potential responsive materials exist. This procedure renders it impossible for a requesting party to ascertain whether DHS has properly withheld the records, and nullifies the agency's burden of demonstrating that it correctly invoked the exemptions. To illustrate, when ruling on the validity of an agency's withholding records under FOIA, courts

13

often compel agencies to produce a *Vaughn* index, which "'identif[ies] each document withheld, the statutory exemption claimed, and [provides] a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption.'" *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 2008 WL 4482855, at *7 (quoting *Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991)); *accord Kubik*, 2011 WL 2619538, at *3 & n.3 (citing *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002)). In cases where no *Vaughn* index is needed, courts will have the agency submit "'a detailed affidavit showing that the information [withheld] logically falls within the claimed exemptions.'" *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 2008 WL 4482855, at *7 (quoting *Minier*, 88 F.3d at 800)). DHS's implementation of the Consent Provision precludes this type of judicial review. If an individual does not comply with the provision, DHS terminates the FOIA process before it has begun, under the guise of applying a procedural regulation which implements FOIA's privacy exemptions. If the requester appeals that decision, DHS can do what it did in this case: file a motion to dismiss the case, alleging that the requester failed to exhaust its administrative remedies. In this manner, the agency obviates the requester's right to judicial review of the agency's application of the privacy exemptions, casting off its legal burden to demonstrate the propriety of its withholdings. *Cf. Kubik*, 2011 WL 2619538, at *2 (holding that in two-step inquiry to determine whether agency "fully discharged its obligations under FOIA," agency first may "show[] that it conducted a search reasonably calculated to uncover all relevant documents" and then "show that any information not disclosed falls within one of the nine FOIA Exemptions") (citing § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994); *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983)). Such an outcome is inconsistent with FOIA and is not permissible under the law.[11]

---

[11] The court notes that some agencies with FOIA third-party consent regulations employ the regulations to facilitate the disclosure process and do not refuse to respond to FOIA requests if the requesting party fails to provide the consents. *See, e.g.*, *Lewis v. U.S. Dep't of Justice*, 609 F. Supp. 2d 80, 83 (D.D.C. 2009).

The Consent Provision's interplay with FOIA's exemptions highlights another fatal deficiency in the regulation: it treats different FOIA applicants differently. Congress designed FOIA to "'provide[] every member of the public with equal access to public documents.'" *Yonemoto*, 686 F.3d at 689 (quoting *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008)); *see Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997) ("FOIA does not permit selective disclosure of information only to certain parties . . . . [O]nce the information is disclosed to [a requester], it must be also made available to all members of the public who request it."); *Ebling v. U.S. Dep't of Justice*, 796 F. Supp. 2d 52, 62 (D.D.C. 2011) ("'[T]he identity of the requesting party [generally] has no bearing on the merits of his or her FOIA request.'"[12] (second brackets in original) (quoting *Reporters Comm. for Freedom of Press*, 489 U.S. at 771)). "[I]f the information is subject to disclosure, it belongs to all." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). To realize this purpose, Congress made the subject matter of the requested documents the bases for FOIA's nine exemptions to production; "whether disclosure is required turns on the nature of the records requested" and not the identity of the requester. *Ebling*, 796 F. Supp. 2d at 62 (citing *Nat'l Archives & Records Admin.*, 541 U.S. at 172). The Consent Provision, however, interferes with this design. It provides that DHS will produce documents about an individual if the requester (1) is that individual or (2) has received consent from (or proven the death of) that individual. It will refuse to produce the same documents to a requester who has not obtained the required consent or proof. DHS cannot lawfully administer its FOIA obligations in this manner.[13]

---

[12] The Supreme Court has noted an exception to this rule when the disclosure objection is based upon a claim of privilege, and the requesting party is the person protected by that privilege. *Reporters Comm. for Freedom of Press*, 489 U.S. at 771. This exception does not apply to the present case.

[13] In its motion for summary judgment, DHS points to several cases that invoke the Consent Provision and contends that they demonstrate the regulation's validity. (*See* Def.'s Mot. Summ. J 12-.) Bar one, however, these cases do not concern challenges to the Consent Provision's lawfulness and, therefore, are inapposite to the present motions. The plaintiffs in these cases appealed DHS's FOIA determinations without questioning the agency's regulatory procedures, and the courts dismissed the cases, *inter alia*, for failure to exhaust administrative remedies pursuant to the Consent Provision. *See, e.g.*, *Allen v. U.S. Dep't of Homeland Sec.*, 479 F. App'x 85 (9th Cir. 2012) (unpublished); *Bd. of Supervisors of Prince William Cnty. v. U.S. Dep't of Homeland Sec.*, No. 11-CV-819, 2012 WL 695889, at *5-6 & n.6 (E.D. Va. Mar. 1, 2012); *Godaire v. Napolitano*, No. 10-CV-1266, 2010 WL 6634572, at *7 (D. Conn. Nov. 18, 2010); *Strunk v. U.S. Dep't of State*, 693 F. Supp. 2d 112, 114-15 (D.D.C.

### b. FOIA Exemption 6

As a means of implementing the sixth exemption under FOIA, the Consent Provision causes DHS to improperly withhold records, and forecloses judicial review of its determinations. Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute clearly unwarranted invasion of personal privacy." § 552(b)(6). The statute unambiguously permits an agency to not divulge personnel and medical files. Which files are "similar" and would lead to a "clearly unwarranted invasion of personal privacy" if released to the public, however, is ambiguous.

Because Exemption 6 aims to protect individuals from "the injury and embarrassment that can result from the unnecessary disclosure of personal information," the Supreme Court has broadly defined "similar" files in this context as those containing "'information which applies to a particular individual.'" *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 2008 WL 4482855, at *20 (citing *Bowen v. U.S. FDA*, 925 F.2d 1225, 1228 (9th Cir. 1991) (quoting *Minnis v. U.S. Dep't of Agric.*, 737 F.2d 784, 786 (9th Cir. 1984) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982))). To determine whether a document's release could lead to a "clearly unwarranted invasion of personal privacy," courts must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Yonemoto*, 686 F.3d at 693 (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991)) (quotation marks omitted). First, the court evaluates whether disclosure would implicate a "nontrivial" or "more than . . . de minimis" personal privacy interest – a determination which requires the court to assess "the nature of the privacy interest at stake and the likelihood that disclosure would lead to its invasion." *Id.* (citations and quotation marks omitted). "Personal privacy" encompasses, but is not limited to, "'the individual's control of information concerning his or her person.'" *Id.* (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763). The threat to personal privacy that may arise from the disclosure of the disputed records "must be non-speculative." *Id.* If the agency cannot establish that disclosure

---

2010). The sole case that addresses the validity of the Consent Provision, *Vest v. Department of the Air Force*, affirmed the regulation without explanation. 793 F. Supp. 2d 103, 115-16 (D.D.C. 2011) ("[T]he plaintiff argues that the regulations are invalid. This argument lacks merit.").

"would lead to the invasion of a non-trivial personal privacy interest protected by Exemption 6," it must disclose the record. *Id.* at 694 (citations omitted).  If the agency surmounts this threshold, the court must balance the privacy interest identified against "'the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens known what their government is up to.'" *Id.* (quoting *Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 355-56 (1997) (per curiam) (brackets in original)).  An agency's burden in showing that it may withhold a record under Exemption 6 "is an 'onerous' one." *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 2008 WL 4482855, at *20 (quoting *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1198 (11th Cir. 2007) (collecting cases)).

DHS's implementation of Exemption 6 through the Consent Provision does not comport with the agency's duty to determine whether the exemption applies to requested records.  As noted previously, if an individual submitting a FOIA request does not comply with the Consent Provision, DHS makes no attempt to search for responsive documents and, instead, summarily refuses to produce any records pursuant to FOIA.  It does not perform any analysis, let alone the balancing test described above, to winnow those documents it should disclose from those it should not.  This blanket refusal to disclose, or even examine, records is not consistent with the agency's disclosure obligations under Exemption 6.  By halting the FOIA process prior to conducting a thorough search for responsive documents and invoking the administrative exhaustion doctrine in the name of enforcing the exemption, DHS makes no effort to meet its burden of showing that the exemption applies to its withholdings and also deprives requesters the judicial review guaranteed to them in the statute.

### c. FOIA Exemption 7(C)

The Consent Provision also compels DHS to improperly withhold records under the personal privacy subsection of Exemption 7 and forecloses judicial review of the agency's determinations made pursuant to the exemption.  Exemption 7(C) permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7).  Although the personal privacy exemption

17

under this subsection is self-evidently broader than those in Exemption 6, protecting information that "could reasonably . . . constitute an unwarranted invasion of personal privacy," rather than a "clearly unwarranted invasion," the contours of the protection afforded remain ambiguous. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 756.

In an analysis of whether records fall within any of the harms listed in Exemption 7, a court first must determine whether the records qualify as "compiled for law enforcement purposes." *Lawyers' Comm. for Civil Rights of S.F. Bay Area*, 2008 WL 4482855, at *11 (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152-53 (1989); *Church of Scientology Int'l. v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993)) (quotation marks omitted). An agency with a "clear law enforcement mandate," must establish only a "'rational nexus'" between its law enforcement duties and the document for which the agency claims Exemption 7. *Id.* (quoting *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1193-94 (9th Cir. 1983)). An agency with mixed law enforcement and administrative functions "must demonstrate that its purpose in compiling the particular document fell within its sphere of enforcement activity." *Id.* (citing *Church of Scientology of Cal.*, 611 F.2d at 748). "Information need not have been originally compiled for law enforcement purposes in order to qualify for the 'law enforcement' exemption, so long as it was compiled for law enforcement purposes at the time the FOIA request was made. *Id.* (citation omitted). If the court determines that an agency compiled a record for law enforcement purposes, the court turns to whether the record could *reasonably* be expected to constitute an *unwarranted* invasion of personal privacy. The nature of the "personal privacy" interest at stake parallels that in Exemption 6, *see Yonemoto*, 686 F.3d at 693 n.7, and "protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants." *Lewis v. U.S. Dep't of Justice*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009) (citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)). If such an interest is at stake, as with Exemption 6, the court must balance the "strong privacy interests in the nondisclosure of third-party records against any asserted public interests in their disclosure." *Id.* at 84 n.3 (citations omitted). To prevail in this analysis, a FOIA applicant "must show that the withheld information is necessary to 'shed any light on the [unlawful] conduct of any Government agency or official.'" *Id.* at 84 (brackets in original) (quoting *Reporters Comm.*

*for Freedom of the Press*, 489 U.S. at 772-73) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)).

The Consent Provision, through which DHS at least partially implements Exemption 7(C), does not comport with the agency's duty to determine whether the exemption applies to requested records. If an individual submitting a FOIA request fails to comply with the Consent Provision, DHS does not search for responsive documents, but simply refuses to produce any records pursuant to FOIA. It does not perform any FOIA analysis to separate those records that it should disclose from those that it should not. This absolute refusal to disclose, or even examine, records contravenes the agency's disclosure obligations under FOIA, as DHS does not even attempt to satisfy its burden of proving that the exemption applies to the withheld documents. Moreover, by halting the FOIA process prior to conducting a thorough search for responsive documents and invoking administrative exhaustion in the name of enforcing the exemption, DHS unlawfully deprives requesters the judicial review guaranteed to them in the statute.

### 5. The Analysis Under a *De Novo* Standard of Review

Employing the *de novo* standard of review, the court finds that the Consent Provision suffers the same defects discussed above. The regulation allows DHS to improperly withhold records, as it enables DHS to avoid its statutory obligation to demonstrate that FOIA's exemptions apply to documents that it has withheld. In a similar manner, the Consent Provision allows DHS to circumvent judicial review of the agency's determinations in the name of administrative exhaustion. The Consent Provision also violates FOIA by allowing DHS to render its determinations based on applicants' identities, rather than based on the nature of the documents requested, as the statute demands. In addition, the regulation causes DHS to impermissibly withhold records under the cover of enforcing the privacy exemptions set forth in Exemptions 6 and 7(C), and obstructs judicial review of these determinations. Because the Consent Provision does not "carry into effect the will of Congress as expressed by the statute," the court finds it unlawful. *Larionoff*, 431 U.S. at 873 n.12.

### IV. Conclusion

For the reasons above, irrespective of whether the court applies a *de novo* standard review or the more deferential *Chevron* test, the court reaches the same result. The court hereby grants in part and denies in part Defendant's Motion for Summary Judgment and grants in part and denies in part Plaintiff's Motion for Summary Judgment. The court dismisses Plaintiff's claim under the Administrative Procedure Act. The court finds the Consent Provision within 6 C.F.R. § 5.3(a) invalid as interpreted and applied to Plaintiff and, more broadly, to FOIA applicants requesting records concerning third-parties; as interpreted and applied to implement Exemption 6 of FOIA; and as interpreted and applied to implement Exception 7(C) of FOIA. In these contexts, the regulation is inconsistent with Congress's statutory mandate. The court therefore enjoins the Department of Homeland Security from using the Consent Provision in these proscribed manners and remands Plaintiff's FOIA requests to the agency for further consideration consistent with this opinion.

IT IS SO ORDERED.

Dated: December 21, 2012



DONNA M. RYU
United States Magistrate Judge