United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALES AND GONZALES BONDS AND INSURANCE AGENCY INC, | No. C-11-02267 DMR |
| Plaintiff(s), | ~~ORDER~~ DENYING MOTION TO ENFORCE JUDGMENT [DOCKET NO. 83] |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | |
| Defendant(s). | |

Plaintiff Gonzales & Gonzales Bond and Insurance Agency has filed a motion to enforce this court's order on summary judgment[1] and to hold Defendant United States Department of Homeland Security ("DHS" or "the agency") in contempt. [Docket No. 82.] Plaintiff contends that DHS failed to comply with the MSJ Order. A hearing was held on the motion on May 8, 2014. Having considered the parties' submissions and arguments, the motion is **denied**.

## I. BACKGROUND

**A. Facts**

The facts of this case have been summarized by this court elsewhere. *See* MSJ Order at 1-4. In brief, Plaintiff is an authorized agent and underwriter of bonds. It posts immigration bonds with

---

[1] *See* Mot. Summ. J. Order ["MSJ Order," Docket No. 60]; *Gonzales & Gonzales Bonds and Ins. Agency v. U.S. Dep't of Homeland Sec.*, 913 F. Supp. 2d 865 (N.D. Cal. 2012)

DHS on behalf of American Surety Company, a federally approved surety company, for the release of aliens from detention pending determination of the alien's immigration status. Since June 23, 2009, Plaintiff has filed approximately 571 requests for alien files[2] ("A-files") with DHS pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The A-files concern individuals released from detention subject to one of Plaintiff's bonds and contain documents relevant to disputed bond breach claims. According to Plaintiff, DHS failed to respond to many of these FOIA requests, and the responses DHS did provide were untimely and/or improper.

**B. Procedural History**

On May 9, 2011, Plaintiff filed this lawsuit, bringing three causes of action for violations of FOIA for the agency's alleged failure and/or refusal to provide Plaintiff with the A-files. Compl. [Docket No. 1]. The court dismissed the complaint but granted Plaintiff leave to amend. [Docket No. 35.]

On March 2012, Plaintiff filed an amended complaint, which restated the three causes of action and added a fourth cause of action challenging the validity of 6 C.F.R. § 5.3(a) (the "Consent Provision"), through which DHS mandated that if a party makes a FOIA request about another individual, "either a written authorization signed by that individual permitting disclosure of those records . . . or proof that that individual is deceased . . . must be submitted," § 5.3(a). Am. Compl. [Docket No. 36]. DHS had taken the position that it would not disclose the requested information until Plaintiff provided waiver or consent forms pursuant to the Consent Provision. Am. Compl. at ¶ 31.

DHS moved to dismiss the amended complaint. [Docket No. 38.] The court rejected DHS's arguments with respect to the first three claims. With respect to the fourth claim, the court dismissed Plaintiff's facial challenge to the validity of the Consent Provision but found that Plaintiff's as-applied challenge survived. *See* Order on Mot. Dismiss [Docket No. 44]. The parties then cross-moved for summary judgment.

---

[2] An A-file is "the official record system that contains information regarding transactions involving an individual as he/she passes through the U.S. immigration and inspection process." Holzer Decl. [Docket No. 84-1] at ¶ 11.

**C. MSJ Order**

On December 21, 2012, this court granted summary judgment in favor of Plaintiff. The court held as follows:

> The court finds the Consent Provision within 6 C.F.R. § 5.3(a) invalid as interpreted and applied to Plaintiff and, more broadly, to FOIA applicants requesting records concerning third-parties; as interpreted and applied to implement Exemption 6 of FOIA; and as interpreted and applied to implement Exception 7(C) of FOIA. In these contexts, the regulation is inconsistent with Congress's statutory mandate.

MSJ Order at 20.

The court found that the Consent Provision violated FOIA "by allowing DHS to improperly withhold records, by releasing the agency from its obligation to demonstrate that FOIA's exemptions[3] apply, and by circumventing judicial review of its determinations." *Id.* at 13. Under its application of the Consent Provision, "DHS not only will withhold all records if a requester does not or cannot comply with the provision, but will not even determine what potential responsive materials exist." *Id.* The court held that "[t]his procedure renders it impossible for a requesting party to ascertain whether DHS has properly withheld the records, and nullifies the agency's burden of demonstrating that it correctly invoked the exemptions." *Id.*

In addition, in its summary judgment motion, DHS had argued that the Consent Provision was merely an implementation of two existing statutory exemptions to disclosure on the basis of personal privacy.[4] The court held that the Consent Provision was an improper means of implementing Exemptions 6 and 7C because the statutory exemptions impose a duty on the agency

---

[3] When Congress enacted FOIA, it intended to "clos[e] the loopholes which allow agencies to deny legitimate information to the public." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989) (quotation omitted). Congress thus structured FOIA so that an agency must disclose records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in 5 U.S.C. § 552(b). *See id.* at 150-51; 5 U.S.C. § 552(b).

[4] DHS asserted that the Consent Provision was an implementation of Exemption 6, which permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and Exemption 7(C), which permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7).

to determine whether the exemption applies to the requested records, whereas the Consent Provision allowed the agency to summarily refuse to disclose or even examine its records without any analysis of whether the exemptions applied.  MSJ Order at 16-18.

The court then "enjoin[ed] the Department of Homeland Security from using the Consent Provision in [the] proscribed manners and remand[ed] Plaintiff's FOIA requests to the agency for further consideration consistent with this opinion."  MSJ Order at 20.

### D.  DHS's Actions After Remand

As a result of the MSJ Order, the agency states that it reviewed and responded to Plaintiff's FOIA requests for A-files.  Holzer Decl. at ¶ 8.  On November 1, 2013, DHS issued to Plaintiff a full denial in response to 564 of Plaintiff's requests,[5] claiming that the records and information requested "are fully exempt from public disclosure pursuant to Exemptions 6 and 7(C) of the FOIA . . . ." *See* Ginsburg Decl. [Docket No. 83] Ex. 1 (Copy of example of DHS response); Holzer Decl. at ¶ 9.  DHS's response to each of Plaintiff's requests was identical.  Motion at 1 n. 1.

According to DHS, A-files "may contain documents and information" that originate from several governmental sources: (1) U.S. Citizenship and Immigration Service's (USCIS) processing and adjudication of applications and petitions submitted for citizenship, asylum, and other immigration benefits, (2) U.S. Immigration and Customs Enforcement's (ICE) law enforcement activities, (3) U.S. Customs and Border Protection's (CBP) inspection and border protection processes, and (4) Immigration Court filings, proceedings documents, and other records.  Holzer Decl. at ¶ 11.  DHS "determined that disclosure of the types of records contained within an Alien file would represent a 'clearly unwarranted invasion of  personal privacy' under FOIA Exemption 6. . . [and] would also 'reasonably be expected to constitute an unwarranted invasion of personal privacy' under FOIA Exemption 7(C), for those records that were compiled for law enforcement purposes, such as documents that originated with ICE and CBP."  Holzer Decl. at ¶¶ 12-13.

---

[5] With respect to the remaining 7 requests (of the 571 total FOIA requests), DHS states that it responded to Plaintiff about six of them in 2010, and has no record of ever receiving the seventh. Holzer Decl. at ¶ 10.

In order to determine whether a FOIA request implicates Exemption 6 or 7(C), DHS "evaluates each request for records containing personal information about an individual under a three-prong evaluation process in order to determine if disclosure of such records is warranted." Holzer Decl. at ¶ 14. Whether or not the individual that is the subject of the requested records has consented to their disclosure is one of the factors DHS considers in this determination. Holzer Decl. at ¶ 14. According to DHS, the consent of the subject is not a requirement, but merely a consideration. If the requester demonstrates that "the public interest in the information pertaining to the individual outweighs the privacy interests of the individual that is the subject of the records," even without obtaining the consent of the subject, DHS will generally disclose the records. Holzer Decl. at ¶ 14. In evaluating Plaintiff's request, the agency "noted that Plaintiff did not articulate any public interest in the Alien Files that would overcome the privacy interests of the subjects of the files." Holzer Decl. at ¶ 15.

Plaintiff contends that DHS failed to comply with the MSJ Order by responding to Plaintiff's requests for the A-files by asserting that the documents requested are exempt from public disclosure.

## II. LEGAL STANDARDS

The law of the case doctrine "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

A federal court has the inherent power to enforce its judgments. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."). Civil contempt is one method of enforcing a judgment. *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."); Fed. R. Civ. P. 70(a) and (e) ("If a judgment

5

requires a party to . . . perform any specific act and the party fails to comply within the time specified, the court may . . . hold the disobedient party in contempt.").

"The standard for finding a party in civil contempt is well settled." *Distributors Association Warehousemen's Pension Trust Fund v. Foreign Trade Zone 3, Inc.,* No. 05-CV-1161-SBA, 2009 WL 975786 at *1 (N.D. Cal. April 9, 2009). The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. *In Re Bennett,* 298 F.3d 1059, 1069 (9th Cir. 2002). Generally, a violation is shown by the party's "failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n ., Inc. v. McCord,* 452 F.3d 1126, 1130 (9th Cir. 2006). Substantial compliance based on a reasonable interpretation of the order is a defense to civil contempt. *Go-Video, Inc. v. The Mot. Picture Ass'n of Am.,* 10 F.3d 693, 695 (9th Cir. 1993). Should a court find a party in contempt, it has discretion in deciding whether to impose sanctions. *Distributors Association*, 2009 WL 975786 at *1 (citing *Shillitani*, 384 U.S. at 370). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986).

### III. DISCUSSION

DHS contends that it has not violated the court's summary judgment order by withholding documents on the basis of FOIA exemptions.

This court agrees. The court's summary judgment order was specific: it invalidated the Consent Provision as applied, and enjoined DHS from using the Consent Provision in certain proscribed manners to avoid its obligation to disclose records. The order did not address whether any FOIA exemptions could be applied to prevent disclosure of the requested documents; whether DHS could include the consent of the subject as a factor in its determination to withhold requested records pursuant to Exemption 6 or 7(C); whether the FOIA permits DHS to withhold entire categories of documents (e.g., documents originating from ICE or CBP); or whether DHS has met its burden of demonstrating that any exemptions apply. Contrary to Plaintiff's assertion, the circumstances here do not present a "never ending loop" of administrative obstinacy in which an

agency refuses to follow a court order on remand; instead, they raise questions that this court has not yet considered. Because the court finds that DHS has substantially complied with its order on summary judgment, it declines to hold DHS in contempt or require DHS to pay Plaintiff's attorneys' fees in bringing this motion. Plaintiff's motion to enforce judgment and for an order holding DHS in contempt is **denied**.

At the hearing, the parties agreed to meet and confer regarding the procedures for considering Plaintiff's challenge to the agency's decision to withhold the requested records. By no later than **June 6, 2014**, the parties shall file either (1) a stipulation to reopen the case and a request for a case management conference or (2) a briefing schedule for a motion to reopen the case.

IT IS SO ORDERED.

Dated: May 8, 2014

DONNA M. RYU
United States Magistrate Judge